UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

CLEOPHAS JAMES CROSS, SR.,

      Debtor.

_____/

Case No. BG 21-01277
Chapter 7

**OPINION SUSTAINING**
**TRUSTEE'S OBJECTION TO EXEMPTIONS**

Appearances:

Martin L. Rogalski, Jenison, Michigan, attorney for Cleophas James Cross, Sr.

Jeff A. Moyer, Grandville, Michigan, Chapter 7 Trustee.

I.       INTRODUCTION and JURISDICTION.

This matter is before the court on the objection of Jeff A. Moyer, chapter 7 trustee (the "Trustee") to the exemption claimed by Cleophas James Cross, Sr. (the "Debtor") in a payment he received from his General Motors pension plan (sometimes referred to herein as the "Plan") prior to the filing of his bankruptcy case. The parties agree that the Plan itself is ERISA-qualified and that the Debtor's interest in the Plan is therefore excluded from property of the estate under § 541(c)(2) of the Bankruptcy Code.[1] They dispute, however, whether the funds which were traceable to the Plan, but held as cash in the Debtor's bank account as of the petition date, enjoy similar protections such that they are not property of the estate, or alternatively, that they may be exempted under the

_____

[1]    The Bankruptcy Code is set forth in 11 U.S.C. §§ 101-1532 inclusive. Specific provisions of the Bankruptcy Code are referred to in this opinion as "§ ___."

1

Michigan exemption statute for pension and other employee benefit plans, Mich. Comp. Laws § 600.5451(1)(*l*).

A hearing on the Trustee's objection was held before this court on November 10, 2021.  Thereafter, the parties filed supplemental briefs, and a subsequent hearing was held on February 3, 2022.  The Debtor appeared at the hearing through counsel.  The Trustee appeared on behalf of himself remotely via Zoom videoconferencing.

The court has jurisdiction over this chapter 7 bankruptcy case.  28 U.S.C. § 1334.  The case, and all related proceedings and contested matters, have been referred to this bankruptcy court for determination.  28 U.S.C. § 157(a); LGenR 3.1(a) (W.D. Mich.).  The matter before the court is a core proceeding and this court has authority to enter a final order.  28 U.S.C. § 157(b)(2)(A) (matters concerning administration of the estate) & (B) (exemptions from property of the estate).

## II.   FINDINGS OF FACT.

The facts of this contested matter are not disputed.  The Debtor filed his chapter 7 bankruptcy petition on May 14, 2021.  The Debtor's assets included a savings account at Bank of America, which contained $1,862.90 as of the filing date.  Of this amount, the parties agree that $1,003.06 was traceable to a Social Security payment received by the Debtor.  The Debtor claimed these funds as exempt under 42 U.S.C. § 407, and the Trustee did not object to this claim of exemption.

The balance of the funds in the Bank of America account, $859.84, were traceable to a monthly payment the Debtor received from his retirement plan with General Motors. The Debtor has alleged, and the Trustee has not disputed, that the General Motors

retirement plan is tax qualified as a pension under § 401 of the Internal Revenue Code, 26 U.S.C. § 401, and satisfies the applicable requirements of the Employee Retirement Income Security Act of 1974 ("ERISA").  Accordingly, there is no dispute in this contested matter that the Plan included the anti-alienation provision required for qualification under § 206(d)(1) of ERISA, 29 U.S.C. § 1056(d)(1), and is excluded from property of the estate under 11 U.S.C. § 541(c)(2).  They disagree, however, as to whether the $859.84 that was distributed by the retirement plan to the Debtor via a prepetition direct deposit, and was held as cash in the Debtor's savings account as of the petition date, is entitled to similar protections.  Specifically, they dispute whether the funds are property of the estate, and if so, whether they may be exempted under applicable Michigan law.

### III.    DISCUSSION.

The Debtor makes two arguments in support of his effort to retain the $859.84 in his savings account.  First, the Debtor asserts that because the Plan itself is protected by ERISA and excluded from property of the estate under 11 U.S.C. § 541(c)(2), the same protection extends to the prepetition payment made to the Debtor from the Plan – i.e., the $859.84 at issue – to the extent the Debtor still held and controlled the funds as of the petition date.  Second, even if the funds were property of the estate, the Debtor argues that they may be exempted under state law, Mich. Comp. Laws § 600.5451(1)(*l*).[2]  The

---

[2]    In amended schedules filed on November 8, 2021, the Debtor also purports to claim an exemption in the funds under ERISA's anti-alienation and preemption provisions, 29 U.S.C. § 1056(d)(1) and 29 U.S.C. § 1144(a), respectively.  (*See* Dkt. No. 31.)  The Debtor's supplemental brief notes that these citations were intended to "invoke the protections afforded by ERISA" but does not argue that they provide a separate basis for exemption of the funds.  (*See* Dkt. No. 36, p. 2.)  The court agrees that these sections of

Debtor bears the burden on the first issue and must establish that the requirements of

§ 541(c)(2) have been met such that the funds at issue are excluded from property of the

estate.  *In re Adams*, 302 B.R. 535, 540 (6th Cir. B.A.P. 2003).  If the funds are property

of the estate, the Trustee bears the burden of proving that the exemption claimed by the

Debtor is not valid.  *See* Fed. R. Bankr. P. 4003(c).  Exemptions are to be liberally

construed in favor of the debtor.  *See In re Schramm*, 431 B.R. 397, 400 (6th Cir. B.A.P.

2010).

A.  *Property of the Estate*.

Section 541(c)(2) excludes a debtor's interest "in a plan or trust that contains a

transfer restriction enforceable under any relevant nonbankruptcy law" from the

Bankruptcy Code's otherwise broad definition of property of the estate.[3]  *Patterson v.*

*Shumate*, 504 U.S. 753, 757-58, 112 S. Ct. 2242 (1992).  In *Patterson*, the United States

---

ERISA are relevant to the Debtor's arguments under § 541(c)(2), but they do not provide
a stand-alone basis for a claim of exemption in pension plan payments after their receipt.

[3]      Section 541(c) states in full:

(c)(1) Except as provided in paragraph (2) of this subsection, an interest of
the debtor in property becomes property of the estate under subsection
(a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an
agreement, transfer instrument, or applicable nonbankruptcy law –
      (A) that restricts or conditions transfer of such interest by the debtor;
      or
      (B) that is conditioned on the insolvency or financial condition of the
      debtor, on the commencement of a case under this title, or on the
      appointment of or taking possession by a trustee in a case under this
      title or a custodian before such commencement, and that effects or
      gives an option to effect a forfeiture, modification, or termination of
      the debtor's interest in property.
(2) A restriction on the transfer of a beneficial interest of the debtor in a trust
that is enforceable under applicable nonbankruptcy law is enforceable in a
case under this title.

11 U.S.C. § 541.

Supreme Court confirmed that the anti-alienation provisions contained in ERISA-qualified pension plans are among the types of "restriction[s] on transfer enforceable under 'applicable nonbankruptcy law'" that could result in the "exclusion of property from the debtor's bankruptcy estate" under § 541(c)(2).  *Id*. at 757.  In this case, the Debtor and the Trustee have agreed that the General Motors Plan is ERISA-qualified and that the Debtor's interest in the Plan itself is excluded from property of the estate.  The dispute here goes one step further and requires the court to consider whether ERISA's anti-alienation protections continue to apply after the funds are paid out of the plan.

The Sixth Circuit Court of Appeals has not directly addressed that issue in a bankruptcy case but has consistently held that ERISA's protections cease to apply after benefits are distributed to the plan beneficiary in other contexts.  For example, in *Central States, S.E. & S.W. Areas Pension Fund v. Howell*, 227 F.3d 672 (6th Cir. 2000), the Sixth Circuit held that once benefits under an ERISA employee welfare benefit plan[4] have been distributed to a properly designated beneficiary, ERISA no longer preempts claims against those proceeds under state law.  The dispute in *Central States* involved the

---

[4]     The Sixth Circuit explained that ERISA plans generally fall "into two categories – 'employee pension benefit plans' and 'employee welfare benefit plans.'"  *Id*. at 676. *Central States* involved an employee welfare benefit plan, while the case currently before this court involves an employee pension benefit plan.  Because ERISA's anti-alienation provision, § 206(d)(1), applies only to pension plans and no comparable provision applies to welfare benefit plans, the United States Supreme Court has held that welfare benefit plans may be subject to alienation or garnishment, while pension plan benefits are not. *Compare Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 108 S. Ct. 2182 (1988) (ERISA does not bar the garnishment of employee welfare plan benefits) with *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 110 S. Ct. 680 (1990) (imposition of a constructive trust against an ERISA pension benefit plan violates the anti-alienation provision).  Regardless of the distinction that may apply to funds while they are held within each type of plan, the *Central States* decision, which considered the protection afforded to plan benefits after they are paid to plan beneficiaries, is instructive in the present case.

5

proceeds of three life insurance policies, one of which was subject to ERISA, and arose when the husband died during the pendency of divorce proceedings.  During the divorce case, the husband changed the beneficiary designation on his ERISA life insurance policy from his wife to his three children from a prior marriage, despite an order of the domestic relations court that prohibited such changes.  After he died, the ERISA life insurance proceeds were paid to the children.  The Sixth Circuit upheld this payment, finding that the domestic relations order was preempted by ERISA.  The court also held, however, that after the benefits were paid to the children, nothing in ERISA prevented the wife from seeking to impose a constructive trust on the benefits.  In so holding, the court favorably cited the Tenth Circuit Court of Appeals' decision in *Guidry v. Sheet Metal Workers Nat'l Pension Fund (Guidry II)*, 39 F.3d 1078 (10th Cir. 1994) (*en banc* decision on remand from the U.S. Supreme Court), which held that while "the anti-alienation provision of ERISA precluded the imposition of a constructive trust *before* distribution of benefits to the beneficiary, . . . nothing in the legislative scheme prevented the imposition of a constructive trust *after* the benefits were paid to the beneficiary of the pension benefits." *Central States*, 227 F.3d at 678 (citing *Guidry II*, 39 F.3d at 1086) (emphasis in original).

Similarly, in *DaimlerChrysler Corp. v. Cox*, 447 F.3d 967 (6th Cir. 2006), the court considered whether the Michigan State Correctional Facility Reimbursement Act (the "SCFRA"), and other state laws and directives, violated ERISA by requiring state prisoners or their wardens to notify their pension plans that benefit payments must be sent to the prisoner's institutional account, where they could subsequently be utilized to reimburse the state for the costs of the prisoner's incarceration.  Because "the SCFRA notices operate on plan benefits *before* they are sent," the Sixth Circuit held that the state

6

law provisions were preempted by ERISA's anti-alienation provisions. *Id*. at 974-76. The court noted, however, that its holding did not render "the state incapable of seeking reimbursement" from a prisoner's pension benefits "[o]nce the benefit payments are received." *Id*. at 976. At that time, the state would be allowed to impose a constructive trust against the funds without running afoul of ERISA's anti-alienation provisions. *Id*. at 974, 976 (citing *Central States* and *Guidry II* "for the proposition that once a pension plan has sent benefit payments to a beneficiary and relinquished control of those payments, the attachment of those funds by a creditor does not constitute an alienation").

The Sixth Circuit's view that ERISA's anti-alienation provisions cease to protect benefits after they are paid to the beneficiary is consistent with the vast majority of circuit caselaw on the subject. *See, e.g.*, *Hoult v. Hoult*, 373 F.3d 47, 54 (1st Cir. 2004) (ERISA's restrictions on alienation apply only to benefits "while held by the plan administrator and not after they reach the hands of the beneficiary"); *Trucking Employees of North Jersey Welfare Fund, Inc. v. Colville*, 16 F.3d 52, 53-56 (3d Cir. 1994) (ERISA anti-alienation provision does not apply to benefits after they are received by a beneficiary, even if they remain in the beneficiary's bank account); *but see United States v. Smith*, 47 F.3d 681, 684-85 (4th Cir. 1995) (holding that ERISA bars alienation of post-retirement annuity payments, but not pre-retirement lump sum payments, after distribution to the beneficiary and vacating criminal restitution order requiring payment from pension benefits), *superseded by* the Mandatory Victims Restitution Act, 18 U.S.C. §§ 3663A-3664. The Michigan Supreme Court has also adopted the "prevailing view" that "ERISA does not protect pension funds after the beneficiary receives them." *State Treasurer v. Abbott*,

7

660 N.W.2d 714, 721 (Mich. 2003) (holding that "ERISA does not preclude distribution pursuant to the SCFRA after the funds are deposited in an inmate's account").[5]

These general principles were also applied in a more recent bankruptcy case, *Marchand v. Whittick (In re Whittick)*, 547 B.R. 628 (Bankr. D.N.J. 2016).  The debtor in *Whittick* obtained a loan from his retirement plan and received the loan proceeds via check prepetition, but had not cashed the check as of the petition date.  The court first held that the check was property of the estate.  In addressing the ERISA-proceeds question, the court determined that it did not need to conduct a detailed analysis of whether the retirement plan was ERISA-qualified "because § 541(c)(2) only excludes from property of the estate the trust assets themselves, not the distributions."  *In re Whittick*, 547 B.R. at 637 (citing *Velis v. Kardanis*, 949 F.2d 78, 81-82 (3d Cir. 1991)).  The court concluded that if distributions are not excluded from property of the estate, the proceeds of a loan would likewise not be excluded.

Based on the overwhelming majority of caselaw, including the Sixth Circuit's holdings in *Central States* and *DaimlerChrysler*, and the bankruptcy court's decision in *Whittick*, this court holds that the $859.84 that was paid to the Debtor from his ERISA-qualified General Motors pension plan, and was held as cash in his savings account as of the petition date, was no longer subject to ERISA's anti-alienation provisions.  As a result, the funds are not protected by § 541(c)(2) and are property of the Debtor's bankruptcy estate.

---

[5]    In *DaimlerChrysler*, the Sixth Circuit declined to follow the portion of the Michigan Supreme Court's reasoning in *Abbott* that addressed the application of the SCFRA to pension benefits while they were still held by the plan. *DaimlerChrysler*, 447 F.3d at 975-76.  The two opinions are consistent, however, on the lack of protection after the funds are distributed.

B. *Claim of Exemption under Michigan Law*.

Even if the proceeds from the pension payment are property of the estate, the Debtor argues that he is entitled to claim an exemption in the funds under Mich. Comp. Laws § 600.5451(1)(*l*).  That section of the Michigan exemption statute provides that a debtor may exempt from property of the estate:

> (*l*) The right or interest of a person in a pension, profit-sharing, stock bonus, or other plan that is qualified under section 401 of the internal revenue code, 26 USC 401, or an annuity contract under section 403(b) of the internal revenue code, 26 USC 403, if the plan or annuity is subject to the employee retirement income security act of 1974, Public Law 93-406, 88 Stat. 829….

Mich. Comp. Laws Ann. § 600.5451(1)(*l*).

As with the property of the estate issue discussed previously, the parties in this contested matter do not dispute that the Debtor's pension Plan is tax qualified, subject to ERISA, and otherwise meets the requirements of subsection (1)(*l*).  It is also undisputed that the Debtor received the Plan payment prepetition, and that the funds were held in his Bank of America savings account as of the filing date.   Because "exemptions are determined as of the filing date," *In re OBrien*, 443 B.R. 117, 130 (Bankr. W.D. Mich. 2011) (citing *White v. Stump*, 266 U.S. 310, 45 S. Ct. 103 (1924)), the question for this court is whether the funds continued to represent a "right or interest" of the Debtor in the pension plan when they were held in the Debtor's saving account as of the petition date. The Debtor asserts that the funds retained their essential nature as pension benefits even after receipt.  The Trustee counters that the proceeds in the bank account are simply cash and are no longer part-and-parcel of the pension plan.  Noting that § 600.5451(1)(*l*) does not specifically exempt pension plan payments or distributions in the same way that other

sections of the state and federal exemption statutes do, the Trustee argues that the Debtor's claim of exemption must be disallowed.

When interpreting a state statute like the Michigan exemption statute at issue here, this court is required to "apply the statute 'in accordance with the controlling decisions of the state supreme court.'"  *In re Sustaita*, 631 B.R. 403, 406 (Bankr. W.D. Mich. 2021) (quoting *Petroleum Enhancer, LLC v. Woodward*, 558 F. App'x 569, 573 (6th Cir. 2014)).  However, the parties did not cite, and the court has not been able to locate, any Michigan Supreme Court caselaw directly addressing whether payments made pursuant to a pension plan may be exempted under Mich. Comp. Laws § 600.5451(1)(*l*) after they are received by the plan beneficiary.  In the absence of such authority, the court "must make the best prediction of what the Michigan Supreme Court would do if it were confronted with the same issue."  *In re Sustaita*, 631 B.R. at 406 (internal quotations, alterations, and citations omitted).  "All relevant authority should be taken into account." *Id*.

The sole reported Michigan case this court was able to locate which addressed the exemption of pension plan interests, albeit under the general exemption statute, Mich. Comp. Laws § 600.6023(1), and not the bankruptcy-specific statute at issue here, is *Cunningham, Davison, Beeby, Rogers, & Alward v. Herr*, 497 N.W.2d 575 (Mich. App. 1993).  *Cunningham* arose after a divorce proceeding, in which the wife received distributions from the husband's employee pension benefit plans pursuant to a qualified domestic relations order.  The court held that the assignment of the benefits to the wife was permitted under ERISA and declined to permit the law firm that represented her in the divorce case to garnish the funds in satisfaction of past attorney's fees.  The court

10

noted that "[i]t is generally true . . . that pension money loses its exempt character once it passes into the hands of a beneficiary."  *Cunningham*, 497 N.W.2d at 577 (citations omitted).  But it ultimately declined to decide that question because the money at issue was never distributed to the wife but was instead transferred directly to a roll-over IRA. *Cunningham* therefore suggests that pension benefits are not subject to exemption after their receipt by a debtor, but it does not specifically so hold.

In the absence of binding Michigan caselaw, the Trustee urges this court to rely on principles of statutory construction and to contrast the language of Mich. Comp. Laws § 600.5451(1)(*l*), with other sections of the Michigan exemption statute which specifically refer to payments, distributions, or funds traceable to certain payments or distribution. For example, § 600.5451(1)(k) provides for the exemption of "payments or distributions" from individual retirement accounts or annuities and § 600.5451(1)(j) permits exemption of "money or other benefits paid, provided, allowed to be paid or provided, or allowed" with respect to certain disability benefits for accidents or injuries.  As the Trustee correctly argues, it is "generally presumed" that the legislature "acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 536, 114 S. Ct. 1757 (1994) (citing *City of Chicago v. Environmental Defense Fund*, 511 U.S. 328, 338, 114 S. Ct. 1588 (1994)); *see* 2A Norman Singer & Shambie Singer, *Sutherland Statutes & Statutory Construction* § 47:23 (7th ed. 2021) (describing this rule as capturing "the essential idea" of the maxim *expressio unius est exclusio alterius* or the expression of one thing implies the exclusion of another).  This court agrees that if the Michigan legislature intended for pension funds that were already paid to be included in the § 600.5451(1)(*l*) exemption, it could have

11

specifically included language indicating that intention, as it did in subsections (1)(k) and (1)(j). The fact that the legislature chose not to do so strongly supports the inference that such pension plan payments are not subject to exemption under subsection (1)(*l*) as a "right or interest" in a pension plan after they are received by a debtor. *Cf. Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168, 123 S. Ct. 748 (2003) (explaining that the *expressio unius* maxim only has force when "it is fair to suppose that [the legislature] considered the unnamed possibility and meant to say no to it").

This court has previously employed the type of analysis suggested by the Trustee when considering whether worker's compensation payments received by debtors prior to the petition date could be exempted under § 522(d)(10)(C) of the federal exemption scheme. *In re Williams*, 181 B.R. 298 (Bankr. W.D. Mich. 1995). In concluding that exemption of the funds and other property at issue would not be permitted, the court distinguished the language of § 522(d)(11), which exempts a "debtor's right to receive, *or property that is traceable to*" certain types of wrongful death, life insurance, or other "tort-like claims," from § 522(d)(10) which applies only to a "debtor's right to receive" certain types of payments, including disability benefits. The court noted that the fact that the "property traceable to" language is included in § 522(d)(11) "underscores that Congress knew how to include traceable assets in § 522(d)(10) had it desired to do so." *In re Williams*, 181 B.R. at 301. Since it had not, the court declined to permit the exemption of benefits that were already received by the debtors under § 522(d)(10). This reasoning applies with equal force to the Michigan exemption statute. Again, if the Michigan legislature intended for the exemption in § 600.5451(1)(*l*) to extend beyond a debtor's interest in a pension plan and to also include payments or proceeds traceable to such

12

plans, it could have easily included language to that effect.  Its failure to do so justifies the inference that the legislature intended for such proceeds to be excluded from the exemption.

In arguing against this conclusion and asserting that the Debtor should be permitted to exempt the pension payment proceeds under Mich. Comp. Laws § 600.5451(1)(*l*), the Debtor primarily relies on a bankruptcy case from the Eastern District of Michigan, *In re Stanley*, 494 B.R. 287 (Bankr. E.D. Mich. 2013).  *Stanley* involved a claim of exemption under Mich. Comp. Laws § 600.5451(1)(j), which exempts certain worker's compensation benefits and is not directly applicable here.  The Debtor argues, however, that the *Stanley* court appropriately considered whether the funds at issue retained their essential character and nature after their receipt and that this court's analysis of subsection (1)(*l*) should employ a similar focus.

In *Stanley*, the debtor wife received a lump sum worker's compensation settlement prepetition.  As of the filing date, $30,000 of the proceeds remained on hand in the debtors' bank account and $6,000 of the proceeds had been used by the debtors to purchase a vehicle.  The debtors claimed the entire $36,000 as exempt under Mich. Comp. Laws § 600.5451(1)(j).  That statutory subsection exempts from property of the estate:

> (j) Money or other benefits paid, provided, allowed to be paid or provided, or allowed, by a stock or mutual life, health, or casualty insurance company because of the disability due to injury or sickness of an insured person ....

Mich. Comp. Laws Ann. § 600.5451(1)(j).  Relying on this statutory language, the debtors argued that the entire $36,000 represented money that had been "paid" or "provided" to them under the worker's compensation settlement. The chapter 7 trustee objected,

13

arguing that once the funds were received by the debtors, they lost their exempt status. The trustee asserted that this was particularly true of the $6,000, which was no longer in the debtors' possession as of the filing date because it had been used for the vehicle purchase.

The *Stanley* court partially agreed with the debtors and held that $30,000 of the award could be exempted as money paid under the settlement. In so holding, the *Stanley* court took the view that the proceeds of a worker's compensation award could be exempted under the Michigan statute to the extent they "remain unspent and essentially in the same form" as of the filing date. *In re Stanley*, 494 B.R. at 291. The court's analysis emphasized the plain language of subsection (1)(j) of the exemption statute, which refers to money "paid" or "provided," both of which are in the past tense and look backward from the petition date. Based on this language, the *Stanley* court opined that "exemptibility should at least be primarily determined by whether or not the award . . . retains its essential character and nature" regardless of whether it was paid or received pre- or postpetition.[6] *Id.* The court reached the opposite conclusion with regard to the $6,000

---

[6] In reaching this conclusion about the $30,000 in unspent proceeds, *Stanley* distinguished a prior decision of this court, *Lasich v. Estate of A.N. Wickstrom (In re Wickstrom)*, 113 B.R. 339 (Bankr. W.D. Mich. 1990), and the Michigan cases on which it relied. The primary issue in *Wickstrom* was whether certain prepetition transfers of potentially exemptible property, including a $20,000 worker's compensation award, could be avoided by the trustee as preferential or fraudulent transfers. To decide that question, the court was required to consider whether the worker's compensation payment at issue remained exempt under the general Michigan exemption statute, Mich. Comp. Laws § 600.6023(1)(f), which contains language that is nearly identical to § 600.5451(1)(j), "*after* the [d]ebtor receives it and *after* the [d]ebtor transfers it to third persons." *Id*. at 344. *Wickstrom* held that the worker's compensation exemption "only covers the right to receive funds" and "does not extend to the funds upon receipt nor to property subsequently purchased with those funds." *Id*. at 344-45 (citing *Martin v. Lamb*, 200 N.W. 160 (Mich. 1924)). *Stanley* declined to adopt this reasoning with regard to the $30,000, because *Wickstrom*, and many of the cases on which it relied, involved factual situations

14

that had been used for the vehicle purchase.  Although these funds were originally paid under the settlement, the court held that they lost their "essential character and nature" as worker's compensation proceeds when they were used as a down payment on the vehicle.  Accordingly, the court denied the claim of exemption in the $6,000.

In this matter, the court is not called upon to decide the worker's compensation exemption issues presented in *Stanley*.  However, even if this court were to accept *Stanley*'s interpretation of the worker's compensation exemption statute,[7] the present case remains distinguishable due to important differences in the language of the respective exemption provisions.  In upholding the debtors' exemption in *Stanley*, the court relied upon Mich. Comp. Laws § 600.5451(1)(j) and its "money or other benefits paid" language.  Only after concluding that the full amount would fall under the "money or other benefits paid" provision did the court determine that the $6,000 was not exempt because it had been used to purchase the vehicle and had lost its essential character. Here, the provision on which the Debtor relies, Mich. Comp. Laws § 600.5451(1)(*l*) exempts a debtor's "right or interest" in a pension plan, but it does not exempt "money or other benefits paid" under such a plan.  As of the petition date, the $859.84 at issue in this case was not a right or interest in a pension plan; instead, it was cash sitting in the Debtor's savings account.  Unless the bank account could first be considered an interest in a pension plan under the statute, there is no need to reach the question of whether the funds in the account retained their essential character and nature.  Unlike the provision

---

where the funds at issue had been transferred or used by the debtors, addressed different exemption statutes, and failed to account for the past tense language in subsection (1)(j).

[7]      The court notes that it would likely be hard-pressed to follow *Stanley*, given the persuasive contrary reasoning in *Wickstrom*.

15

at issue in *Stanley*, the plain language of Mich. Comp. Laws § 600.5451(1)(*l*) cannot reasonably be construed as applying to money paid or distributed from a retirement account, particularly in light of Michigan case law and widely accepted principles of statutory construction that suggest to the contrary.

## IV.   CONCLUSION.

The funds at issue in this case, although traceable to a payment from the Debtor's ERISA-qualified pension plan, were held by the Debtor as cash in his savings account on the petition date.  After the Debtor's receipt of the funds, they were no longer subject to ERISA's anti-alienation provisions so as to be excluded from property of the estate under § 541(c)(2).  They were also no longer part of the Debtor's "right or interest" in the pension plan so as to be subject to exemption under Mich. Comp. Laws § 600.5451(1)(*l*). Accordingly, the Trustee's objection to the Debtor's claim of exemption in the funds is sustained.  A separate order shall be entered accordingly.

**IT IS SO ORDERED.**

**Dated March 24, 2022**




James W. Boyd
United States Bankruptcy Judge